UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YOUNAS HAJI,

        Plaintiff,

        v.

THE UNITED STATES OF AMERICA,
THE CITY OF NEW YORK, DRUG
ENFORCEMENT AGENCY SPECIAL
AGENTS ROBERT BARRETT, KATE
BARNARD, PAUL BUCHANAN, AND
UNKNOWN EMPLOYEES OF THE
UNITED STATES, NEW YORK STATE,
AND NEW YORK CITY,

        Defendants.

ECF Case

No. 08 Civ. 2230 (TPG)(JCF)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
DEFENDANTS THE UNITED STATES OF AMERICA AND DRUG
ENFORCEMENT ADMINISTRATION SPECIAL AGENTS ROBERT
BARRETT, KATE BARNARD, AND PAUL BUCHANAN TO DISMISS,
<u>OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>**

MICHAEL J. GARCIA
United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York  10007
Telephone: (212) 637-2740
Facsimile:  (212) 637-2702

CAROLINA A. FORNOS
Assistant United States Attorney
    – Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT. ................................................................ 1

STATEMENT OF FACTS. ..................................................................... 3

    A.    New York Organized Crime Drug Enforcement Strike Force . ............. 3

    B.    The Khat Investigation. ......................................................... 3

    C.    The February 10, 2006 Surveillance of Yunis. ........................... 5

    D.    March 16 and March 17, 2006 Deliveries Involving Yunis. ................. 7

    E.    Identification of Yunis. ........................................................ 7

    F.    Indictment of Younas Haji by a Grand Jury and
           Subsequent Arrest. ............................................................ 8

    G.    Dismissal of Haji's Indictment. ............................................ 10

ARGUMENT. ................................................................................ 10

POINT I.     HAJI'S CONSTITUTIONAL TORT CLAIMS AGAINST
            THE UNITED STATES AND THE FEDERAL AGENTS
            SHOULD BE DISMISSED ............................................... 10

    A.    This Court Lacks Subject Matter Jurisdiction Over
           Constitutional Tort Claims Against the United States
           and the Federal Agents in their Official Capacity. ........................... 10

    B.    Haji's *Bivens* Claims Against the Federal Agents Should
           Be Dismissed on Grounds of Qualified Immunity............................. 12

        1.    Legal Standards For Qualified Immunity. ............................... 12

        2.    The Federal Agents Are Entitled to Qualified Immunity . ........ 15

               a.    Special Agents Barnard and Buchanan Had
                   Probable Cause to Arrest Haji. ...................................... 16

               b.    It Was Objectively Reasonable for Special Agent
                   Barrett to Identify Haji As Yunis. ................................... 18

POINT II.    HAJI'S COMMON LAW TORT CLAIMS AGAINST THE
FEDERAL DEFENDANTS SHOULD BE DISMISSED...................... 22

    A.    Haji's Common Law Claims Against the Federal Agents
Should Be Dismissed as the FTCA Is Haji's Exclusive Remedy. ........ 22

    B.    Haji Cannot Establish Malicious Prosecution by the
United States. ........................................................................................ 22

CONCLUSION. ...................................................................................................... 25

## TABLE OF AUTHORITIES

**CASES**                                                                **PAGE**

*Adeleke v. United States,*
    355 F.3d 144 (2d Cir. 2004)............................................................................ 12

*Anderson v. Creighton,*
    483 U.S. 635 (1987). ................................................................................... 15

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
    403 U.S. 388 (1971)..................................................................................... 2

*Block v. North Dakota,*
    461 U.S. 273 (1983). ................................................................................... 11

*Bolling v. Sharpe,*
    347 U.S. 497 (1954). ................................................................................... 10

*Boyd v. City of New York,*
    336 F.3d 72 (2d Cir. 2003)............................................................................ 16

*Caldarola v. Calabrese,*
    298 F.3d 156 (2d Cir. 2002)..................................................................... 16, 19

*Cartier v. Lussier,*
    955 F.2d 841 (2d Cir. 1992)........................................................................... 14

*Davis v. Scherer,*
    468 U.S. 183 (1984). ................................................................................... 13

*Escalera v. Lunn,*
    361 F.3d 737 (2d Cir. 2004)........................................................................... 16

*Guerrero v. Scarazzini,*
    No. 06-5016, 2008 WL 1817245 (2d Cir. Feb. 23,2008). ............................. 20, 21

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982). .............................................................................. 13, 14

*Hill v. California,*
    401 U.S. 797 (1971). .......................................................................... 17, 18, 20

*Hope v. Pelzer,*
    536 U.S. 730 (2002). ..................................................................... 14

*Hunter v. Bryant,*
    502 U.S. 224 (1991). ............................................................... 13, 21

*Hygh v. Jacobs,*
    961 F.2d 359 (2d Cir. 1992) ............................................................ 23

*Jocks v. Tavernier,*
    316 F.3d 128 (2d Cir. 2003) ............................................................ 23

*Keene Corp. v. United States,*
    700 F.2d 836 (2d Cir. 1983) ............................................................ 12

*Kingsley v. Bureau of Prisons,*
    937 F.2d 26 (2d Cir. 1991) ............................................................. 11

*Lennon v. Miller,*
    66 F.3d 416 (2d Cir. 1995) ............................................................. 21

*Loria v. Gorman,*
    306 F.3d 1271 (2d Cir. 2002) ...................................................... 13, 14

*Maldonado v. Pharo,*
    940 F. Supp. 51 (S.D.N.Y. 1996). ..................................................... 22

*Martinez v. Simonetti,*
    202 F.3d 625 (2d Cir. 2000) ....................................................... 13, 15

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985). ................................................................... 13

*Robinson v. Overseas Military Sales Corp.,*
    21 F.3d 502 (2d Cir. 1994) ....................................................... *passim*

*Ruiz v. Herrera,*
    745 F. Supp. 940 (S.D.N.Y. 1990). .................................................... 20

*Saghezi v. Reno,*
    No. 94 Civ. 8291, 1996 WL 524338
    (S.D.N.Y. Sept. 16, 1996) ..................................................... 16, 17, 20

*Saucier v. Katz,*
    533 U.S. 194 (2001). ................................................................. 14

*Savino v. City of New York,*
    331 F.3d 63 (2d Cir. 2003). ..................................................... 23

*Siegert v. Gilley,*
    500 U.S. 226 (1991). ................................................................. 14

*Singer v. Fulton County Sheriff,*
    63 F.3d 110 (2d Cir. 1995). ............................................... 15, 23

*Smith v. Reagan,*
    841 F.2d 28  (2d Cir. 1988). .................................................... 14

*Tavarez v. Reno,*
    54 F.3d 109 (2d Cir. 1995). ..................................................... 11

*Townes v. City of New York,*
    176 F.3d 138 (2d Cir. 1999). .................................................. 16

*United States v. Muse, et al.,*
    No. 06-cr-00600 (S.D.N.Y. filed July 19, 2006). ................... 9, 19, 24

*West v. Atkins,*
    487 U.S. 42 (1988). .................................................................. 11

*X-Men Sec., Inc. v. Pataki,*
    196 F.3d 56 (2d Cir. 1999). ..................................................... 14

## STATUTES

28 U.S.C. § 1346(b)(1). ................................................................. 22

28 U.S.C. § 2671. ............................................................................. 1

28 U.S.C. § 2679(b)(1). ................................................................. 22

42 U.S.C. § 1983. ............................................................... 1, 2, 10

## **PRELIMINARY STATEMENT**

Defendants the United States of America (the "United States"), Drug Enforcement Administration ("DEA") Special Agents Robert Barrett ("Special Agent Barrett"), Katherine Barnard ("Special Agent Barnard"), and Paul Buchanan ("Special Agent Buchanan") (all three Special Agents, collectively, the "Federal Agents," and with the United States, the "Federal Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the complaint filed by Plaintiff Younas Haji ("Haji"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment pursuant to Federal Rules of Civil Procedure 56.

On July 26, 2006, Haji was arrested in Portland, Maine, pursuant to a valid arrest warrant, issued out of the Southern District of New York, after a grand jury indicted Haji on two counts of conspiracy to distribute and import khat, which contains cathinone, a stimulant classified as a Schedule I controlled substance in the United States. Less than six months later, on or about January 8, 2007, federal prosecutors dismissed Haji's indictment.

Haji now brings this action against the Federal Defendants, and against the City of New York, and Unknown Employees of the United States, New York State, and New York City, alleging malicious prosecution in violation of 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the Constitution of the United States, as well as the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq*.

Haji's constitutional tort claims against the Federal Defendants, however,

should be dismissed.  First, this Court lacks subject matter jurisdiction over constitutional tort claims against the United States (as well as the Federal Agents in their official capacities) because it is well established that there is no waiver of sovereign immunity for those claims.  Second, with respect to Haji's constitutional tort claims against the Federal Agents in their individual capacities, those claims cannot be asserted under 42 U.S.C. § 1983, as that section is limited to persons acting under color of *state* law.  Haji's constitutional tort claims against the Federal Agents are thus properly construed as arising under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Haji's *Bivens* claims, however, should be dismissed on the grounds of qualified immunity as the Federal Agents had probable cause to believe Haji was one of the co-conspirators, a grand jury indicted Haji, and he was arrested pursuant to a validly issued arrest warrant.

Haji's common law tort claims against the Federal Defendants should also be dismissed.  The FTCA provides the exclusive remedy for claims of negligence or wrongful conduct by employees of the United States.  Thus, any common law tort claims against the Federal Agents must be dismissed.  Nor can Haji sustain a tort claim against the United States because he cannot establish the requisite elements for malicious prosecution: proceedings against him were not terminated in his favor; there was probable case to arrest him; and mistaken identification cannot constitute actual malice.  Accordingly, Haji's common law tort claims against the United States under the FTCA should also be dismissed.

## STATEMENT OF FACTS

**A.    New York Organized Crime Drug Enforcement Strike Force**

Haji's allegations against the DEA Special Agents arise from their work as members of the New York Organized Crime Drug Enforcement Strike Force ("Strike Force"), a federal task force charged with investigating international drug trafficking and money laundering organizations with ties to New York City. *See* Declaration of Robert Barrett, ("Barrett Declaration"), dated July 30, 2008, ¶ 1; Compl. ¶ 2. The Strike Force is comprised, in part, of Special Agents with the DEA, Immigration and Customs Enforcement ("ICE"), the Internal Revenue Service ("IRS"), and other agencies, as well as federally-deputized officers of the New York State Police and New York City Police Department. Barrett Decl. ¶ 1; Compl. ¶ 11.

**B.    The Khat Investigation**

In 2006, the Strike Force opened an investigation into khat importation, distribution, and money laundering. Barrett Decl. ¶¶ 1, 3; Compl. ¶¶ 11, 12. Khat is a tall, evergreen shrub cultivated in Kenya, Ethiopia, and neighboring countries in Africa. Barrett Decl. ¶ 4. Khat contains cathinone, a stimulant classified as a Schedule I controlled substance in the United States. *Id.* Chewing khat results in euphoria and stimulation, and produces side effects that include disorientation, hallucinations, outbursts of irrational violence, and hypertension. *Id.* Khat is also highly addictive. *Id.*

Because cathinone begins to dissipate from khat without refrigeration days after harvest, khat trafficking organizations must efficiently transport the plant

3

from the African cultivation areas to users in the United States. *Id.* ¶ 5. Typically, traffickers send cultivated bundles of khat by air to European cities, where it is then transferred to human couriers, who fly commercial aircrafts to the United States with khat-filled luggage, or by next-day commercial air deliveries to mail drops in the United States. *Id.*

In early 2006, the Strike Force learned that Somali immigrants supplied large quantities of khat to the Boston metropolitan area and used a money-transmitting business named Olympic Hawala, in Portland, Maine, which can be described as the Somali equivalent of Western Union, to send to Europe payments for khat shipments to, and proceeds of khat sales in, the United States. *Id.* ¶ 6. Due to a suspected link to an overseas terrorist cell, the Federal Bureau of Investigation's Joint Terrorism Task Force, participated in the khat investigation. *Id.* From February to July 2006, the Strike Force intercepted numerous telephone conversations of immigrants from Somalia discussing their receipt and distribution of moderate to large quantities of khat. *Id.* ¶ 4.

Specifically, the Strike Force intercepted calls to and from suspected ring leaders Ali Awad ("Awad") and Bashi Muse ("Muse"), and many of those calls referred to a co-conspirator named "Yunis." *Id.* ¶ 7; Compl. ¶¶ 12-13. Yunis himself received and placed telephone calls to Awad, Muse and others about Yunis picking up, mailing, and transporting packages of khat. Barrett Decl. ¶ 7. The Strike Force traced Yunis's calls to a cellular phone number, listed to a female subscriber, at 13

Ruggles Street, in Roxbury, Massachusetts, in the Boston metropolitan area. *Id.*

**C.     The February 10, 2006 Surveillance of Yunis**

On February 10, 2006, the Strike Force conducted mobile surveillance, in unmarked vehicles, of several suspects, including Yunis, while intercepting the conspirators' telephone conversations. *Id.* ¶ 9; Compl. ¶ 15.  On that day, Strike Force agents monitored several cellular telephone calls in which Awad stated that he expected to receive a large khat shipment that DHL was to deliver to Mailboxes Etc., at 847 A 2nd Avenue, New York, New York.  Barrett Decl. ¶ 9.  Thus, the Strike Force members established surveillance near that location.  *Id.*

Later during the day, two Special Agents, both members of the Strike Force, saw a driver remove three brown boxes from a DHL truck and take them into Mailboxes, Etc. *Id.* ¶ 10.  Soon thereafter, the Strike Force intercepted a call in which the store employee contacted Awad to inform him three boxes had arrived. *Id.*  Other monitored calls indicated that Awad was expecting four boxes of khat, but that ICE agents had seized one box at JFK airport.  *Id.*

Through earlier wiretapped conversations, the Strike Force also learned that Awad had instructed Yunis from Boston to rent a large Sport Utility Vehicle ("SUV"), and drive to Manhattan, to pick up the boxes of khat from Mailboxes Etc. *Id.* ¶ 11.  Unknown to Yunis, Awad discussed with another khat trafficker, Osman Osman ("Osman"), that Awad did not fully trust Yunis, and that Osman would watch Yunis retrieve the boxes.  *Id.*

The Strike Force agents stationed at Mailboxes Etc., observed a maroon 2006 Chevrolet Upland SUV with Massachusetts license plates park near the store. *Id.* ¶ 12. One of the Special Agents observed a black male leave the SUV, and monitored calls confirmed that it was Yunis. *Id.* Yunis, with the assistance of the store clerk, placed all three boxes in the SUV. *Id.* Yunis drove away, followed by Osman, and the Strike Force members followed the vehicles. *Id.*

Yunis and Osman pulled over on Third Avenue, between 94th and 95th Street, where Osman was seen inspecting the khat. *Id.* ¶ 13. The two vehicles departed shortly thereafter and Strike Force members followed. *Id.* The Strike Force agents then saw both vehicles stop on 118th Street, and intercepted calls revealed that Yunis and Osman were distributing khat to an individual who intended to transport khat to Minneapolis. *Id.* ¶ 14.

Monitored calls revealed that Yunis and Osman traveled to a FedEx Kinkos store in Harlem at 116th Street near Broadway. *Id.* ¶ 15. One of the Special Agents on the Strike Force identified Yunis' SUV and Osman's vehicle. *Id.* Yunis was observed entering the FedEx Kinkos store with one cardboard box. *Id.* One of the Special Agents entered the FedEx Kinkos store, and observed Yunis filling out mailing labels. *Id.*

Strike Force members realized that while Yunis was taking the first box into FedEx Kinkos, he left the door of his SUV open. *Id.* ¶ 16; Compl. ¶ 15. One of the Strike Force members took a box of khat from the SUV. Barrett Decl. ¶ 16. When

6

Yunis returned to the SUV, Strike Force members observed him to be very upset, and monitored calls revealed that Yunis called Awad to tell him that a box had disappeared. *Id.* Awad then instructed Osman to return to FedEx Kinkos, at which point Osman met with Yunis and both drove away in their separate vehicles to Connecticut. *Id.*

**D.    March 16 and March 17, 2006 Deliveries Involving Yunis**

Monitored calls by the Strike Force also revealed that on March 16, 2006, and March 17, 2006, Yunis intended to retrieve ten boxes of khat from Germany, and that DHL was to deliver the boxes to various Manhattan mail drops, so that members of the khat conspiracy could then transport the khat to Massachusetts, Ohio, and Minnesota. *Id.* ¶ 17. DHL Security seized those boxes, and Special Agent Barrett took representative samples for laboratory testing, confirming they contained khat. *Id.*

**E.    Identification of Yunis**

Seeking to discover Yunis' last name, Special Agent Barrett asked for assistance from colleagues in the Boston DEA office, asking them to obtain photographs from the Boston Police Department of all individuals with the first name Yunis (or Younas, Younis, Yonas), and all persons associated with the address in Roxbury, Massachusetts, the subscriber for Yunis' cellular phone service. *Id.* ¶ 18. Special Agent Barrett also requested that ICE search immigration databases for all Somali immigrants with the first name of Yunis (and other spellings thereof), residing in Massachusetts and Maine, where the Strike Force believed khat

7

traffickers laundered proceeds through Olympic Hawala.  *Id.*

     In response to his request, Special Agent Barrett received photographs and files from both the Boston DEA office and ICE.  *Id.* ¶ 19.  Among these was the immigration file of Younas Haji, the Plaintiff in this case, which showed that Haji often transmitted money overseas through Olympic Hawala in Portland, Maine, that he had connections in Massachusetts, and that he was associated with a Somali immigrant named Ismaciil Geele ("Geele"), a khat distributor well known to federal agents.  *Id.*

     Special Agent Barrett then showed the photographs that he received from the Boston DEA office and ICE to the Special Agents who conducted the surveillance of Yunis at the FedEx Kinkos store on February 10, 2006.  *Id.* ¶ 20.  One of the Special Agents positively identified Haji as the man he observed at FedEx Kinkos.  *Id.* ¶ 19. In light of this identification, and Haji's connections with Olympic Hawala and Geele, the Strike Force genuinely believed that they had identified Yunis of the khat trafficking organization.  *Id.*

### F.    Indictment of Younas Haji by a Grand Jury and Subsequent Arrest

     On July 19, 2006, Special Agent Barrett testified before a federal grand jury in the Southern District of New York, presenting all the evidence the Strike Force had collected.  *Id.* ¶ 21; Compl. ¶ 20.  That same day, the grand jury returned a six-count sealed indictment against 44 individuals, including Haji.  Barrett Decl. ¶ 21. Haji was named in the indictment as one of the "transporters for the Organization

responsible for moving shipments of khat from one city to another city within the United States." *Id.* Haji was charged in Count I with conspiracy to distribute and possess with intent to distribute a controlled substance, namely cathinone in the form of khat, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C), and 846, and in Count II with conspiracy to import a detectable amount of cathinone, in the form of khat, in violation of 21 U.S.C. §§ 812, 952(a), 960(b)(3). *Id.* ¶ 21.[1]

A United States Magistrate Judge then signed arrest warrants for Haji and the other indicted individuals. *Id.* ¶ 23. As Haji's file indicated he lived in Portland, Maine, Special Agent Barrett requested that Special Agent Katherine Barnard, based in the Portland, Maine DEA office, execute the arrest warrant for Haji. *Id.* Special Agent Barnard, along with Special Agent Buchanan, executed the warrant and arrested Haji on July 26, 2006. *Id.*; Compl. ¶ 23; Declaration of Kate Barnard ("Barnard Decl."), dated July 31, 2008, ¶ 4; Declaration of Paul Buchanan, ("Buchanan Decl."), dated July 31, 2008, ¶ 2.

At a subsequent identity hearing, held on Thursday, July 27, 2006, before the United States District Court for the District of Maine, in Portland, Maine, a Magistrate Judge found that Haji was the same individual named in the arrest warrant. Barnard Decl. ¶ 5; Barrett Decl. ¶ 24.

On August 1, 2006, Haji appeared at a detention hearing in Portland, Maine.

---

[1] *See United States v. Muse, et al.*, No. 06-cr-00600 (DLC) (S.D.N.Y. filed July 19, 2006) (docket entry Nos. 2, 47 (reflecting order to unseal indictment and superseding indictment)). The counts against Haji were the same in the original and in the superseding indictment.

9

Barnard Decl. ¶ 6.  Haji was released on an unsecured bond with conditions, and he was directed to appear in the Southern District of New York.  *Id.*

### G.    Dismissal of Haji's Indictment

In the meantime, Strike Force members had arrested other individuals named in the indictment, and showed Haji's photograph to several key co-conspirators and cooperating defendants, but none identified Haji.  Barrett Decl. ¶ 26.  Haji also presented evidence of an alibi for the dates he was alleged to have been engaged in the distribution of khat.  Barrett Decl. ¶ 27; Compl. ¶ 31.

On January 8, 2007, prosecutors filed a *nolle prosequi,* which was signed by the Honorable Denice Cote, District Court Judge, Southern District of New York, on January 16, 2007.  Declaration of Carolina A. Fornos ("Fornos Decl."), dated July 31, 2008, at ¶ 2, Ex. A; Compl. ¶ 5.

## ARGUMENT

### I.    HAJI'S CONSTITUTIONAL TORT CLAIMS AGAINST THE UNITED STATES AND THE FEDERAL AGENTS SHOULD BE DISMISSED

#### A.    This Court Lacks Subject Matter Jurisdiction Over Constitutional Tort Claims Against the United States and the Federal Agents in their Official Capacity

Haji brings this action pursuant to 42 U.S.C. § 1983, alleging constitutional violations of his Fourth and Fourteenth Amendment[2] rights against the United

---

[2]It is well established that the Fourteenth Amendment is limited to State, not federal, action and thus, Haji cannot maintain a claim of constitutional violations of his Fourteenth Amendment rights against the United States or any of the Federal Agents. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).  Accordingly, Haji's constitutional tort claims are limited to the Fourth Amendment.

States and DEA Special Agents Barrett, Barnard, and Buchanan.  (Compl. ¶ 7.)

Section 1983, however, provides a cause of action for the deprivation of

constitutional rights committed by a person acting under color of *state* law.  *See*

*West v. Atkins*, 487 U.S. 42, 48 (1988).  Thus, a Section 1983 action "cannot lie

against federal officers." *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 n.4 (2d Cir.

1991).  Where a plaintiff has brought a Section 1983 claim against federal

defendants in error, the proper course of action is to construe the complaint as

stating a cause of action under *Bivens*.  *Robinson v. Overseas Military Sales Corp.*,

21 F.3d 502, 510 (2d Cir. 1994).  Accordingly, Haji's Section 1983 claims should be

construed only as *Bivens* claims.[3]

Haji's *Bivens* claims, however, should be limited to the federal agents only in

their individual capacities because sovereign immunity bars such claims against

the United States, or against federal agents in their official capacities.  "The basic

rule of federal sovereign immunity is that the United States cannot be sued at all

without the consent of Congress."  *Block v. North Dakota*, 461 U.S. 273, 287 (1983);

*accord Robinson*, 21 F.3d at 510 (same).  This protection applies not only to the

United States *per se*, but also to "a federal agency or federal officers [acting] in their

official capacities," because an action against them is "essentially a suit against the

United States."  *Id.*

---

[3]Courts, however, apply the same substantive standards to *Bivens* and
Section 1983 claims.  *See Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995) ("federal
courts have typically incorporated § 1983 law into *Bivens* actions").

Here, there is no applicable waiver for constitutional tort claims against the United States (and thus against the Federal Agents in their official capacities). *Robinson*, 21 F.3d at 510. Indeed, the law is well-settled that the United States has not waived its sovereign immunity as to constitutional tort claims for monetary damages. *Id.* As a result, constitutional claims for damages brought against the United States are "routinely dismissed for lack of subject matter jurisdiction" on the grounds of sovereign immunity. *Keene Corp. v. United States*, 700 F.2d 836, 845 n.13 (2d Cir. 1983); *see also Adeleke v. United States*, 355 F.3d 144, 151-53 (2d Cir. 2004) (affirming dismissal of due process damages claim against the United States on the basis of sovereign immunity); *Robinson*, 21 F.3d at 510 (affirming dismissal of constitutional damages claims against federal employees in their official capacity on the basis of sovereign immunity).

Accordingly, Haji's *Bivens* claims against the United States (and the Federal Agents in their official capacities) should be dismissed for lack of subject matter jurisdiction.

**B.     Haji's *Bivens* Claims Against the Federal Agents Should Be Dismissed on Grounds of Qualified Immunity**

**1.     Legal Standards For Qualified Immunity**

The doctrine of qualified immunity provides "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982). Public officials are entitled to qualified immunity if "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Martinez v. Simonetti*, 202 F.3d 625, 633-34 (2d Cir. 2000) (internal quotations and citation omitted).

The doctrine of qualified immunity "strikes a balance between the need to provide a means for the vindication of constitutional guarantees and the societal costs that inhere in litigation against public officials." *Loria v. Gorman*, 306 F.3d 1271, 1281 (2d Cir. 2002). It "recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated." *Davis v. Scherer*, 468 U.S. 183, 195 (1984). Thus, to ensure that government officials do "not err always on the side of caution because they fear being sued," the "qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quotations and citations omitted). If the official "reasonably believed that his actions did not violate the plaintiff's rights, [the official] is entitled to qualified immunity *even if that belief was mistaken*." *Loria*, 306 F.3d at 1282 (emphasis added).

In light of these considerations, the Supreme Court has emphasized that qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).

13

Accordingly, a qualified immunity ruling "should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). "The Supreme Court has expressly encouraged the use of summary judgment when qualified immunity is raised as a defense." *Cartier v. Lussier*, 955 F.2d 841, 844 (2d Cir. 1992).[4]

Generally, courts perform a two-step analysis in determining whether an official is entitled to qualified immunity. *See Loria*, 306 F.3d at 1281 "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (citation omitted). If a plaintiff's allegations do not state a constitutional claim, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

On the other hand, if a plaintiff adequately alleges a constitutional violation, a court must then determine whether the constitutional right at issue was clearly established at the time of the alleged infringement. *Id.* If it was not clearly established, then the court must "analyze the objective reasonableness of [a

---

[4]Pending resolution of the Federal Defendants' motion to dismiss, or in the alternative, for summary judgment, the Federal Defendants respectfully request a stay of any discovery. The Supreme Court has instructed that "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow*, 457 U.S. at 818; *see also Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 67 (2d Cir. 1999). Likewise, in *Smith v. Reagan*, 841 F.2d 28 (2d Cir. 1988), the Second Circuit instructed that a motion to dismiss on qualified immunity grounds could not be held in abeyance while discovery proceeded, as "[t]he purpose of early determinations of immunity defenses is, after all, to lift the burdens of litigation from a defendant who should not be a party at all." *Id.* at 31.

defendant official's] belief in the lawfulness of his actions." *Loria*, 306 F.3d at 1282. Even where the right alleged to have been infringed were clearly established, however, a public official is entitled to qualified immunity if the official "reasonably believed that his actions did not violate the plaintiff's rights, . . . even if that belief was mistaken." *Id.*; *accord Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

### 2.    The Federal Agents Are Entitled to Qualified Immunity

In the present case, Haji alleges that the Federal Agents violated his rights under the Fourth Amendment by maliciously prosecuting him.  (Compl. ¶¶ 35, 37-38).  "The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person — *i.e.*, the right to be free of unreasonable or unwarranted restraints on personal liberty." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995).

The right to not be arrested without probable cause is clearly established. *Martinez*, 202 F.3d at 634.  Thus, the appropriate question for the Court on a qualified immunity defense is "whether a reasonable officer could have believed that [his actions were] lawful, in light of the clearly established law and the information the officer [ ] possessed." *Id.*  (internal quotations and citation omitted). A lawful arrest — pursuant to probable cause — "requires the arresting officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Id.* (internal quotations and citation omitted). "Where an officer may have reasonably but mistakenly concluded that probable cause existed,

15

the officer is nonetheless entitled to qualified immunity." *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002). Thus, the existence of probable cause is an absolute defense to claims of false arrest, as well as malicious prosecution, entitling the Federal Agents to qualified immunity from litigation. *See, e.g.*, *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (false arrest); *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003) (false arrest and malicious prosecution); *Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999) (false arrest/false imprisonment).

In the present case, the Federal Agents are all entitled to qualified immunity.

### a.    Special Agents Barnard and Buchanan Had Probable Cause to Arrest Haji

Special Agents Barnard and Buchanan executed a valid Arrest Warrant, issued out of the Southern District of New York, and arrested Haji pursuant to that warant on July 26, 2006. Barnard Decl. ¶ 3, Ex. A.; Barrett Decl. ¶ 23. Nothing on the face of the warrant gave either Special Agent Barnard or Special Agent Buchanan any reason to believe that it was deficient, or that it lacked probable cause. Barnard Decl. ¶ 8; Buchanan Decl. ¶3. To the contrary, a review of the warrant indicates that it was issued on the basis of an indictment charging Haji with conspiracy to distribute and import khat. Barnard Decl. ¶ 3, Ex. A. Further, the warrant was signed by a magistrate judge. *Id.*

"Generally, a magistrate's review of an arrest warrant application results in a presumption that the warrant was issued on probable cause." *Saghezi v. Reno*, No. 94 Civ. 8291, 1996 WL 524338, at *11 (S.D.N.Y. Sept. 16, 1996) (citations

omitted).  "Substantial deference" is owed to a reviewing court, and a challenge to

an arrest or search warrant under such circumstances is "an uphill battle."  *Id.*

Accordingly, the warrant itself is probable cause which entitles Special Agents

Barnard and Buchanan to qualified immunity.

Qualified immunity is particularly appropriate in this case where the record

demonstrates that Special Agents Barnard and Buchanan properly executed the

warrant.  On July 27, 2006, the day after Haji's arrest, a federal district court

magistrate judge in Portland, Maine held an identity hearing, confirming that Haji

was the person named on the Arrest Warrant.  Barnard Decl. ¶ 5.  As such, Haji

cannot assert that Special Agents Barnard and Buchanan acted unreasonably, and

qualified immunity is proper.  In fact, even where the *wrong* person is arrested,

qualified immunity is nonetheless proper where the officers reasonably believed

they had arrested the correct person.  *See Hill v. California*, 401 U.S. 797, 804

(1971).

In *Hill*, for example, the Supreme Court upheld a search and seizure, finding

no violation of the Fourth Amendment, where officers suspected petitioner Hill of

being a robbery suspect, had probable cause to go to petitioner's house, and, at the

house, arrested a guest of Hill, mistakenly believing it was Hill.  *Id.* at 799-800.

Although Hill's guest claimed he was not Hill and produced identification, the

Supreme Court noted that "aliases and false identification are not uncommon," and

the facts surrounding the search and seizure supported the finding that the officers'

mistake was reasonable.  *Id.* at 803-04.  The Supreme Court further concluded that

17

the officers acted reasonably in proceeding "to do what the law would have allowed them to do if [the guest] had in fact been Hill, that is, to search incident to arrest and to seize evidence of the crime the police had probable cause to believe Hill had committed." *Id.* at 804-05.

As Special Agents Barnard and Buchanan executed a validly issued arrest warrant, and arrested the individual named on the warrant, both are entitled to qualified immunity.

> **b.** **It Was Objectively Reasonable for Special Agent Barrett to Identify Haji As Yunis**

Special Agent Barrett is also entitled to qualified immunity for his actions because he reasonably believed that Haji was the individual identified by the Strike Force as Yunis.  In early 2006, the Strike Force learned that Somali immigrants supplied large quantities of khat to the Boston metropolitan area and used a money-transmitting business named Olympic Hawala in Portland, Maine to send payments for khat shipments.  *See* Barrett Decl. ¶ 6.  Pursuant to court authorized wiretaps, a person known as Yunis was identified by the Strike Force as being actively involved in khat distribution.  *Id.* ¶ 7.  This information enabled the Strike Force to conduct a physical surveillance of drug trafficking activity on February 10, 2006, during which time a member of the Strike Force physically witnessed Yunis filling out mailing labels at the FedEx Kinkos store in Harlem at 116th Street near Broadway.  *Id.* ¶ 15.

Following the connections with Somalia, Massachusetts, and Olympic

Hawala in Portland, Maine, Special Agent Barrett sought to ascertain Yunis' full

identity by asking fellow Strike Force members, reliable sources, for photographs of

all individuals with the first name Yunis (and other spellings thereof); persons

associated with the address in Roxbury, Massachusetts; Somali immigrants with

the first name of Yunis (and other spellings thereof) who resided in Massachusetts

or Maine, where the Strike Force believed khat traffickers laundered proceeds

through Olympic Hawala. *Id.* ¶ 18.

In response to his request, the Boston DEA office and ICE provided Special

Agent Barrett with various files and photographs. *Id.* ¶ 19. Among these was

Haji's immigration file, which showed that Haji's first name was Younas, he was a

Somali immigrant, who often used Olympic Hawala to transmit money overseas,

that he had connections in Massachusetts, and, significantly, that Haji was

associated with a Somali immigrant named Ismaciil Geele, a khat distributor well

known to federal agents. *Id.* ¶ 19.[5] Further, Haji's immigration file contained a

photograph, through which a member of the Strike Force positively identified Haji

as the man he observed at FedEx Kinkos store on February 10, 2006. *Id.* ¶ 20.

Based on the foregoing information from trustworthy sources, Special Agent

Barrett reasonably believed that Yunis and Haji were the same person and that

Haji had committed a crime. *See Caldarola*, 298 F.3d at 162. As a result, Special

Agent Barrett testified before a grand jury as to the identity of Yunis, (as well as to

------

[5]Geele was one of the 44 individuals indicted in *United States v. Muse, et al.*, No. 06-cr-00600 (DLC) (S.D.N.Y. filed July 19, 2006).

19

the khat trafficking, money laundering, and 43 other conspirators), which led to the

subsequent indictment and issuance of a warrant for Haji's arrest.  Barnard Decl. ¶

3, Ex. A.  At no time during the grand jury proceedings or through the arrest of

Haji, did Special Agent Barrett have reason to believe that the Strike Force had

mistakenly identified the Yunis involved in the conspiracy.  Barrett Decl. ¶¶ 28-29.

"[S]ufficient probability, not certainty, is the touchstone of reasonableness

under the Fourth Amendment," and even where police officers may end up being

mistaken, their mistake may nevertheless be "understandable" and the arrest "a

reasonable response to the situation facing them at the time."  *Hill v. California*,

401 U.S. 797, 804 (1971); *see also Ruiz v. Herrera*, 745 F. Supp. 940, 946 (S.D.N.Y.

1990) (no constitutional violation exists where a police officer "arrests someone with

probable cause, but by mistake").

For example, in *Guerrero v. Scarazzini*, No. 06-5016, 2008 WL 1817245 (2d

Cir. Feb. 23, 2008) (Summary Order), the Second Circuit recently held that officers

assigned to a drug enforcement task force had arguable probable cause to arrest the

plaintiff on the mistaken belief that he was a narcotics dealer, when, in fact, the

suspect the officers intended to arrest was plaintiff's son.  *Id.* at *1.  In reversing the

district court's denial of qualified immunity, the Second Circuit concluded that

> officers of reasonable competence could disagree as to whether [the agent]
> had probable cause to identify [plaintiff] as the suspected narcotics
> dealer.  A fellow officer identified [the actual suspect] as the suspected
> narcotics dealer seen emerging from a white Lexus; a search of the New
> York Police Department database revealed that the white Lexus was
> registered to [the actual suspect]; the [same] last name . . . appeared on
> both the deed and a utility bill for the property where [plaintiff] lived
> (and was arrested); and [plaintiff's] voice exemplar matched that of the
> suspect.

20

*Id.* at *2.  Despite the fact that the identification by the agent resulted in the arrest of the wrong person, the Second Circuit nonetheless concluded that the agent was entitled to qualified immunity because "'in our view, a rational jury could *not* find that [his] judgment was so flawed that no reasonable officer would have made a similar choice.'"  *Id.* at * 2 (quoting *Lennon v. Miller*, 66 F.3d 416, 424-25 (2d Cir. 1995)) (emphasis in original).

Here, in light of Haji's connections with Somalia, Olympic Hawala in Portland, Maine, and Geele, a known khat distributor, a jury could not find that Special Agent Barrett's "judgment was so flawed that no reasonable officer would have made a similar choice."  *See Guerrero*, 2008 WL 1817245 at *2.  As the Supreme Court recognized, "the court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed" years after the fact.  *Hunter*, 502 U.S. at 228.  Accordingly, Special Agent Barrett is also entitled to qualified immunity.

## II.    HAJI'S COMMON LAW TORT CLAIMS AGAINST THE FEDERAL DEFENDANTS SHOULD BE DISMISSED

Haji's also brings common law tort claims for malicious prosecution against the United States under the FTCA (Compl. ¶ 35), and the Federal Agents (Compl. ¶ 37).  Haji's claims, however, should be dismissed for failure to state a claim.

### A.    Haji's Common Law Claims Against the Federal Agents Should Be Dismissed As the FTCA Is Haji's Exclusive Remedy

The FTCA provides the exclusive remedy for tort claims against the United States and renders the United States liable, to the same extent as a private party, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission *of any employee* of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1) (emphasis added); *see also* 28 § 2679(b)(1) (providing that FTCA remedy is exclusive).  Accordingly, Haji's malicious prosecution allegations against the Federal Agents are properly brought only against the United States, and only under the FTCA.

### B.    Haji Cannot Establish Malicious Prosecution by the United States

Under New York law,[6] the elements of a malicious prosecution claim are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's

---

[6]With respect to Haji's FTCA claims, the law of New York applies as the events giving rise to the malicious prosecution claim occurred in New York. *See Maldonado v. Pharo*, 940 F. Supp. 51, 53-54 (S.D.N.Y. 1996).

actions." *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (internal quotations and citations omitted); *see also Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). In the present case, Haji cannot succeed in establishing all the elements of his claim.

*First*, "[a] cause of action for malicious prosecution may not be maintained where the prosecution of the plaintiff was not terminated in his favor." *Hygh v. Jacobs,* 961 F.2d 359, 367 (2d Cir. 1992). "A dismissal in the interest of justice is neither an acquittal of the charges nor any determination of the merits. Rather, it leaves the question of guilt or innocence unanswered." *Id.* at 368 (internal quotations and citations omitted); *accord Singer*, 63 F.3d at 118 (2d Cir. 1995). Here, Haji's *nolle prosequi* states that "further prosecution of Younas Haji would not be in the interests of justice." Fornos Decl., Ex. A. As such, "as a matter of law, [the dismissal in the interests of justice] cannot provide the favorable termination required as the basis for a claim of malicious prosecution." *Id.* (citing cases). Without a favorable termination, Haji cannot maintain his malicious prosecution claim.

*Second*, as explained herein, the Federal Agents had probable cause for their actions. Special Agents Barnard and Buchanan arrested Haji pursuant to a validly issued arrest warrant. *See supra* Part I.B.2.a. Further, Special Agent Barrett had an objectively reasonable basis to believe that Haji was the same man identified by the Strike Force as Yunis, and believed to have been part of the khat conspiracy. *See supra* Part I.B.2.b. Accordingly, Haji cannot demonstrate lack of probable

23

cause, a necessary element to a claim of malicious prosecution.

*Finally*, nowhere in Haji's complaint does he actually allege that any of the Special Agents sued under *Bivens* acted with "actual malice." Instead, Haji conclusorily alleges that all defendants "maliciously" prosecuted him, and focuses the allegations in his complaint on his perception that the evidence against him was insufficient to arrest him. *See, e.g.,* Compl. ¶ 16 (alleging Strike Force used cell and landline telephone numbers to identify him, but contesting that he ever spoke with Awad or other members of the khat conspiracy); ¶ 19 (alleging Haji's recorded voice is distinguishable from Yunis' voice). As demonstrated above, however, neither Haji's telephone nor his voice was used in identifying him. To the contrary, Special Agent Barrett had several independent reasons to believe that Haji was connected with the khat conspiracy. *See supra* Part I.B.2.b.

As Haji cannot establish the requisite elements of malicious prosecution, his common law tort claims should also be dismissed.

## CONCLUSION

For the foregoing reasons, the Federal Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment, should be granted.

Date:  July 31, 2008
New York, New York                    Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney
Southern District of New York

By:     /s/ Carolina A. Fornos
CAROLINA A. FORNOS
Assistant United States Attorney
86 Chambers Street
New York, New York 10007
Tel.: (212) 637-2740
Fax: (212) 637-2702
Email: Carolina.Fornos@usdoj.gov

25